**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ANGELA VITTI,

                Plaintiff,

      -against-

MACY'S INCORPORATED d/b/a MACY'S INC.
d/b/a MACY'S NEW YORK, and CLINIQUE
LABORATORIES, LLC,

                Defendants.

Civil Action No.: 14-cv-5108 (RJS)

<u>**OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTIONS FOR SUMMARY JUDGMENT**</u>

LAW OFFICES OF LAURIE E. MORRISON
*Attorney for Plaintiff*
100 Church Street, Suite 801
New York, New York 10007
(212) 721-4051 (office)(646) 651-4821 (fax)
morrison@lemorrisonlaw.com

## Contents

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

POINT I ......................................................................................................................... 1

GENUINE FACTUAL DISPUTES EXIST TO DEFEAT DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT IN THEIR ENTIRETY ..................................................... 1

   A.  SUMMARY JUDGMENT STANDARD ........................................................... 1

   B.  A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY
DISCRIMINATED AGAINST PLAINTIFF BECAUSE OF HER DISABILITY ................... 2

     1.  DISCRIMINATION PRIMA FACIE CASE .................................................. 2

     a)  ADAAA and The New York State Human Rights Law .................................. 3

     b)  The New York City Law Is More Broadly Construed Than The ADAAA And The New
York State Law ..................................................................................................... 3

     2.  PLAINTIFF WAS DISABLED AS A MATTER OF LAW ............................... 4

     3.  A REASONABLE JURY CAN FIND THAT PLAINTIFF WAS QUALIFIED TO
PERFORM HER JOB, WITH OR WITHOUT ACCOMMODATION ..................................... 7

     4.  A REASONABLE JURY CAN FIND CAUSATION AND THAT DEFENDANTS'
PROFFERED REASON FOR FIRING PLAINTIFF WAS PRETEXTUAL ........................... 9

   C.  A REASONABLE JURY CAN FIND THAT DEFENDANTS CREATED A HOSTILE
WORK ENVIRONMENT .................................................................................................. 12

   D.  A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY
RETALIATED AGAINST PLAINTIFF .............................................................................. 14

POINT II ........................................................................................................................ 15

DEFENDANTS FAILED TO REASONABLY ACCOMMODATE PLAINTIFF .................... 15

AS A MATTER OF LAW .............................................................................................. 15

POINT III ....................................................................................................................... 18

CLINIQUE JOINTLY-EMPLOYED PLAINITFF AS A MATTER OF LAW ....................... 18

POINT IV ....................................................................................................................... 21

DENIAL OF DEFNDANTS' MOTIONS IN THEIR ENTIRETY IS FURTHER WARRANTED
AS PLAINTIFF WAS DENIED A FULL AND FAIR OPPORTUNITY TO CONDUCT
DISCOVERY ................................................................................................................ 21

CONCLUSION ............................................................................................................... 24

## INTRODUCTION

Defendants' motions warrant dismissal in their entirety.  The "facts" set forth in Defendants' Briefs and Statements of "Undisputed" and Material Facts bear no resemblance to the actual facts contained in the evidentiary record, or to the facts Plaintiff will prove at trial. Defendants misrepresent, withhold and/or outright *ignore* actual facts of record, as they improperly recite their own manufactured "facts" in a light most favorable to themselves, in violation of Federal Rule of Civil Procedure 56.  Defendants further take every reasonable inference (as well as several quite unreasonable inferences) for themselves, rather than granting Plaintiff those inferences as Rule 56 requires.  To urge the Court to grant the extreme remedy of summary judgment on the basis of a record Defendants know contain genuinely disputed facts does a disservice to the Court and violates Plaintiff's Seventh Amendment rights.

## STATEMENT OF FACTS

To avoid duplicative factual summaries, Plaintiff respectfully refers the Court to Plaintiff's annexed Counter-Statements to Defendants' Rule 56.1 Statements and to the facts asserted in the legal argument sections of the herein memorandum.

## POINT I

## GENUINE FACTUAL DISPUTES EXIST TO DEFEAT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT IN THEIR ENTIRETY

### A.  SUMMARY JUDGMENT STANDARD

"A motion for summary judgment may not be granted unless the court determines that there is *no* genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." Cronin v. Aetna Life Ins. Co., No. 94-

1

7419, 1995 U.S. App. LEXIS 1552, *202 (2d Cir., Jan. 25, 1995) (emphasis added); Fed. R. Civ. P. 56(c). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment." Id.; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Further, "[t]he court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." Cronin, No. 94-7419, 1995 U.S. App. LEXIS 1552.

"On a motion for summary judgment, 'a court cannot try issues of fact; it can only determine whether there are issues to be tried.'" Cronin, No. 94-7419, 1995 U.S. App. LEXIS 1552, *202, *quoting* Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987) (internal quotes omitted); Rotuba Extrudens v. Ceppos, 46 NY2D 223 (1978) (The Court's role in determining a summary judgment motion is "limited to issue finding not issue resolving."); Amatulli v. Delhi Construction Corp., 77 NY2d 525, 531-532 (1991) (same).

Despite the above, courts have dismissed employment cases on summary judgment at alarming rates.  The Supreme Court held in Desert Palace v. Costa that courts cannot apply higher evidentiary standards in employment discrimination cases than in other types of cases. 539 U.S. 90, 99-101 (2003).  The Costa decision particularly noted that it makes no sense to apply higher evidentiary standards in a civil case than in a criminal case, where a person's life and liberty are on the line and where proof beyond a reasonable doubt is required.  Id. at 100.

Here, not just one – but *several* genuine disputes of material fact exist to defeat Defendants' motions in their entirety.  For those issues not in dispute, the evidence weighs heavily, if not entirely, in Plaintiff's favor.

## B. A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFF BECAUSE OF HER DISABILITY

### 1. DISCRIMINATION PRIMA FACIE CASE

a)  ADAAA and The New York State Human Rights Law

The Americans with Disabilities Act, as amended (hereinafter, the "ADAAA"), grants protection from employment discrimination to any "qualified individual with a disability."  42 U.S.C. § 12112(a).  Employment discrimination claims asserting disparate treatment are analyzed under the three-step burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

Plaintiff defeats a motion for summary judgment by first proving by the preponderance of the evidence a prima facie case that: (1) Plaintiff fell within a protected class; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 45 (2d Cir. 2015) (quoting Burdine, 450 U.S. at 252-53). "The requirements to establish a prima facie case are 'minimal,' and a plaintiff's burden is therefore not 'onerous.'" Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128 (2d Cir. 2012) (internal citations omitted).

b)  The New York City Law Is More Broadly Construed Than The ADAAA And The New York State Law

As the Second Circuit held in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112-113 (2d Cir. 2013), "federal courts reviewing [New York City Human Rights Law] NYCHRL claims must … analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." (citations

3

and quotation marks omitted).  "[T]he totality of the circumstances must be considered because 'the overall context in which [the challenged conduct occurs] cannot be ignored.'" Id.

### 2.  PLAINTIFF WAS DISABLED AS A MATTER OF LAW

Macy's denial of Plaintiff's disabilities shows an egregious misrepresentation of the applicable law and facts of this case.  Specifically, Defendants completely *ignore* the 2009 amendments to ADA, which significantly expanded the universe of what it means to be "disabled" under the law.  The 2009 amendments sought to "reinstat[e] a broad scope of protection to be available under the ADA."  42 U.S.C. § 12101(b)(1).

Under the ADAAA, "disability" is still defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A). However, Congress mandates that "disability" "shall be construed in favor of broad coverage" and the question of whether an impairment amounts to a disability "should not require extensive analysis." 42 U.S.C. §§ 12102(4)(A); 12102(4)(B); 28 CFR 35.101(b); 29 CFR 1630.1(c)(4). A court's analysis of the ADA must now shift away from the complicated side-show of whether someone is disabled, and instead focus on the real question: whether there was illegal discrimination. 28 CFR 35.101(b); 29 CFR 1630.1(c)(4). The amendments make crystal clear that the primary focus in ADAAA cases "should be whether [covered] entities have complied with their obligations," not whether an individual's impairment amounts to a disability.  42 U.S.C. § 12101.

Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."   42 U.S.C. §

12102(2)(A).  The Federal Regulations further list impairments that have substantially limited Plaintiff: high blood pressure, panic or anxiety disorders and depression. 74 Fed. Reg. 48,442 (Sept. 23, 2009); *see also* <u>Reilly v. Revlon, Inc.</u>, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009) (denying summary judgment with respect to depression being a disability under the ADA, NYSHRL and NYCHRL; "both the [NYSHRL & NYCHRL] recognize depression as a 'disability'") (*citing* <u>Giordano v. City of New York</u>, 274 F.3d. 740, 753 (2d Cir. 2001)).

The doctors' notes submitted to Defendants during Plaintiff's employment state that Plaintiff has **"individual psychotherapy sessions every Wednesday [that] cannot be changed"** (Declaration of Laurie E. Morrison, Esq. (hereinafter, "Morrison Decl."), doctors' notes, collectively EXHIBIT 4); and that Plaintiff received medical leaves from November, 2012 to January, 2013; and from March 10-11, 2013 – *3 weeks before her firing* -- for **emergency hospitalization** and for **"a serious health condition that prevents [Plaintiff] from performing an essential function of [Plaintiff's] job [including] physical presence in work area; interaction with clients and co-workers … Panic Disorder with Agoraphobia … Wednesday weekly 45 minute sessions; Medication management sessions, generally monthly."** (Morrison Decl., Leave of Absence, pp. 1-2, Part A. ¶¶ 1, 3-4,6; Presbyterian Hospital Records, collectively EXHIBIT 4).

Plaintiff's 3-page written complaint further describes that **"The day after [Plaintiff] attended strategy (Clinique class)"** co-worker **"Sherry"** claimed that Plaintiff was **"high as [expletive]."** (Id. at 1). **"[Sherry] said this knowing I am on medication for depression and anxiety, that are prescribed by my psychiatrist … I have been diagnosed with multiple disorders and was also on a 2-month medical leave requested by my psychiatrist."** (Id. at 1).

Plaintiff also complained that **"now other consultants are finding it to be the topic of discussion … They are also watching me take my meds which I no longer do in front of people."** (Id. at 2). **"I feel more than harassed …."** (Id. at 2). **"I spoke to more than one manager and they requested I file a complaint. My family wants me to hire a lawyer however I do not want to take it that far."** (Id. at 3). **"I have seen Sherry once since the incidence and I'm still being ignored."** (Id. at 3). **"I do not know how to go about my next action so I would like to speak to someone about my options."** (Id. at 3).

Further, anxiety makes it difficult for Plaintiff to breathe, and at times she cannot breathe. Plaintiff also has hot flashes, becomes "jittery", she has trouble walking (because she cannot breathe), and the anxiety also negatively affects Plaintiff's blood pressure and her sleep. (Vitti Dep. Tr. 467:5-468:8). Depression immobilizes Plaintiff and causes migraine headaches (Vitti Deo. Tr. 468:9-469:3). Agoraphobia caused Plaintiff to go on an extended medical leave from November, 2012 to January, 2013. (Vitti Dep. Tr. 469:4-14). The co-worker's unlawful abuse further triggered Plaintiff's agoraphobia once she returned from medical leave. (Vitti Dep. Tr. 469:15-470:6). High blood pressure caused Plaintiff to be hospitalized on several occasions, and Plaintiff has chronic hypertension. (Vitti Dep. Tr. 470:7-471:9).

The *purpose* of the ADAAA was to make it much easier for individuals to meet the definition of disability and to therefore be protected from discrimination. *See* 42 U.S.C. 12102(4)(A). Therefore, it comes as no surprise that Plaintiff easily qualifies as disabled under the ADAAA. To satisfy the definition of disabled, Plaintiff need only prove that her impairments substantially limit *one* major life activity. 42 U.S.C. 12102(4)(C), which Plaintiff has far exceeded.

Further, the NYSHRL and NYCHRL "do not require[] *any* showing that the disability substantially limits a major life activity." Giordano v. City of New York, 274 F.3d. 740, 753 (2d

Cir. 2001) (emphasis added).  Accordingly, Plaintiff's several well-documented ailments easily qualify as disabilities under the NYSHRL and the NYCHRL as well.

Macy's claims that they somehow were unaware of Plaintiff's disabilities, that Plaintiff did not make accommodation requests, and that Plaintiff did not provide medical documentation to support her accommodation requests misrepresent the evidentiary record to such an egregious extent that Macy's is outright _lying_ to this Court. (Ref. Macy's Rule 56.1 Statement).

The existence of Plaintiff's requests for medical leaves from work and for scheduling modifications, all of which were supported by doctors' notes, a completed FMLA application and/or by emergency hospitalization records (and all of which Macy's did not _mention_ in their submissions); over 200 pages of medical records (which Macy's also did not _mention_ in their submissions); Plaintiff's written complaint (which Macy's further concealed from this Court); and Plaintiff's approved extended medical leaves and scheduling modifications cannot be disputed.  It is also undisputed that Defendants accommodated Plaintiff's scheduling needs for the first 8 months of her employment, then they stopped _13 days_ after Plaintiff's written complaint, and _6 weeks_ after Plaintiff returned from medical leave. (_Compare_ Written Complaint, dated February 14, 2013 -- Wednesday scheduling beginning February 27, 2013 -- January 2, 2013 return from Medical Leave; Morrison Decl., EXHIBITS 4 & 5).  Plaintiff further charges that Clinique's Regional Education Executive, Cherise Wale (sp?) (referred to as "Cherise W" and as "Sharisse W") repeatedly harassed Plaintiff after Plaintiff could not attend a Wednesday Clinique class because of her pre-scheduled therapy appointment. (Morrison Decl., EXHIBIT 1, Vitti Dep. Tr. 138:12-140:14).

### 3.  A REASONABLE JURY CAN FIND THAT PLAINTIFF WAS QUALIFIED TO PERFORM HER JOB, WITH OR WITHOUT ACCOMMODATION

The Supreme Court and Second Circuit are clear that demonstrating Plaintiff's qualification for her position is a *de minimus* task.  "As we have repeatedly held, the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that [s]he possesses the basic skills necessary for performance of [the] job." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91-92 (2d Cir.2001) (internal citations omitted).  "As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." Id; *see also* Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-254 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination."); Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n.44 (1977) ("Although the McDonnell Douglas formula does not require direct proof of discrimination, it does demand that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought. Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one.")

Here, there can be no question that Plaintiff was qualified to perform the essential functions of her job, as Plaintiff did so for almost one year and Macy's admits that they made a "mistake" in firing her!  Plaintiff also received commendations for her positive work performance, including receiving a Certificate from Clinique that **"Angela Vitti has achieved I am Clinique status"** on August 15, 2012." (Morrison Decl., EXHIBIT 3)

Macy's also directly contradicts itself: on the one hand admitting that they should not have fired Plaintiff and claiming that they offered to reinstate Plaintiff's employment[1] – but on the other hand claiming that Plaintiff was somehow not qualified for her position.  Macy's also seems to forget that Plaintiff's accommodations were initially approved of without incident when they subsequently argue that Plaintiff's attendance during her medically required appointments were somehow suddenly critical to her work performance.

### 4. A REASONABLE JURY CAN FIND CAUSATION AND THAT DEFENDANTS' PROFFERED REASON FOR FIRING PLAINTIFF WAS PRETEXTUAL

The final element requires that plaintiff demonstrate that her disability was causally related to Defendants' adverse employment actions.  Causation may be proven by showing that discriminatory animus lies behind Defendants' actions and/or by showing pretext. Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999) (A plaintiff may meet her burden at this final stage of the framework "either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without

---

[1] It is also important to note that Defendants' purported offer of reinstatement was NOT unconditional, and their intent to further discriminate and retaliate against Plaintiff had she accepted employment was palpable. Defendants' abuse escalated after Plaintiff's verbal complaints and Defendants stopped accommodating Plaintiff's medical needs and fired Plaintiff 13 days and 6 weeks, respectively, after Plaintiff's written Complaint. Defendants' unlawful intent is further evidenced by their willingness to forfeit the parties' settlement in principle solely because Plaintiff would not agree to forever waive her ability to apply to work for or to work for not only Defendants but also for over 100 of Defendants' affiliates whom Plaintiff had never worked for or asserted any charges against. Accordingly, it was more than reasonable for Plaintiff to not accept reinstatement, and doing so does not negatively affect Plaintiff's monetary recovery in any way. Miano v. AC & R Advertising, 875 F. Supp. 204, 220-221 (S.D.N.Y. 1995) ("An offer of reinstatement will only operate under *Ford Motor Company* to toll the accrual of potential back pay damages if the offer is unconditional.").

more."); <u>Sista v. CDC Ixis N. Am., Inc.</u>, 445 F.3d 161, 173 (2d Cir. 2006) (same); <u>Back v. Hastings On Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 123 (2d Cir. 2004) ("[P]laintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision ….").

Plaintiff can demonstrate the last element of a prima facie case by showing that adverse actions occurred in circumstances from which a reasonable jury could infer unlawful intent. <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 720 (2d Cir. 2002); <u>Cifra v. GE</u>, 252 F.3d 205, 217 (2d Cir. 2001). Further, the causal connection needed to prove causation and/or pretext "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action," which occurred in the instant case. <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996); <u>Treglia</u>, 313 F.3d at 720.

Macy's admits that they stopped accommodating Plaintiff's scheduling needs on February 27, 2013 – less than 2 months after Plaintiff's extended medical leave (ending in January, 2013) and *13 days* after Plaintiff's written complaint, dated February 14, 2013.  Defendants also fired Plaintiff on April 4, 2013 – *6 weeks* after receiving her written complaint and *3 weeks* after Plaintiff's emergency hospitalization. The Second Circuit holds that the close temporal proximity between Plaintiff's medical/health emergencies and Defendants' adverse actions suffice to establish both causation and pretext. <u>Treglia</u>, 313 F.3d at 720 (2d Cir. 2002); *see also*, <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 769 (2d Cir. 1998) (two months between protected activity and adverse action sufficient to establish causation); <u>Johnson v. Palma</u>, No. 88-7846, 1991 U.S. App. LEXIS 7065 (2d Cir., April 2, 1991) (same).

An inference of discriminatory intent may also be gleaned from a variety of circumstances, including "the more favorable treatment of employees not in the protected group; or the sequence

of events leading to the plaintiff's discharge," which also occurred in the instant case. Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009).

Macy's purported "misunderstanding" of its own progressive discipline policy occurred within *1 month* of Plaintiff's written complaint and emergency hospitalization – which further suffices to demonstrate causation and pretext. *See e.g.*, Norville v. Staten Island University Hosp., 196 F.3d 89, 97 (2d Cir. 1999) (evidence that the employer "departed from its usual employment practices and procedures" in dealing with the plaintiff supports an inference of discrimination); Cosgrove v. Sears, Roebuck & Co., No. 92-7197, 1993 U.S. App. LEXIS 30041, *1040 (2d. Cir., Nov. 19, 1993) (affirming retaliation holding where Defendant did not follow its own procedures for addressing employee performance deficiencies before firing Plaintiff after Plaintiff's legally protected complaint).

Further, Plaintiff is not required to produce evidence that directly contradicts Defendants' purported legitimate reasons to defeat summary judgment. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Rather, "once the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reasons, that is, to prove that they are "unworthy of credence," there is no requirement that the plaintiff come forward with additional independent evidence of discrimination. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-149 (2000). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Id. at 147; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 511. "Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination [and] no additional proof of discrimination is required." St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 511; Reeves, 530 U.S. at 147.

Macy's proffered reason for ceasing to accommodate Plaintiff (which led to her firing) is "unworthy of credence." Macy's claims that they stopped accommodating Plaintiff due to a purported "elimination of preference-based scheduling *absent approved [] disability accommodation*". (Macy's Rule 56.1 Statement, Section C) (emphasis added).  Defendants already approved Plaintiff's disability scheduling for the first 8 months of her employment – so it defies logic that they would suddenly stop accommodating her because of a policy that carves out an exception for "approved disability accommodations."

### C.  A REASONABLE JURY CAN FIND THAT DEFENDANTS CREATED A HOSTILE WORK ENVIRONMENT

Plaintiff demonstrates a prima facie case of hostile work environment under the ADAAA[2] and under the New York Human Rights Law ("NYSHRL")[3] by a showing that: (1) she is a member of a protected class; 2) that she suffered unwelcome harassment; 3) that she was harassed because of her membership in a protected class; and 4) that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).

However, "[w]hile the law requires that the incidents of alleged harassment be 'severe or pervasive,' this does not mean that an employer may be held liable only in 'the most egregious cases.'" Mills v. George R. Funaro & Co., No. 99 Civ. 4816, 2001 U.S. Dist. LEXIS 396, *29

---

[2] Hostile work environment claims under the ADA are evaluated under the same standards as hostile work environment claims under Title VII. Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).

[3] "New York courts require the same standard of proof for claims brought under the [NYSHRL] as those brought under Title VII." Mills v. George R. Funaro & Co., No. 99 Civ. 4816, 2001 U.S. Dist. LEXIS 396, *29 (S.D.N.Y. Jan. 18, 2001) *citing* Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n.4 (2d Cir. 1995).

(S.D.N.Y. Jan. 18, 2001) *citing* Torres v. Pisano, 116 F.3d 625, 631 (2d. Cir. 1997). "Any relevant factor may be taken into account, [but] no single factor is required." Id.

Further, "the federal severe or pervasive standard of liability no longer applies to NYCHRL claims, and the severity or pervasiveness of conduct is relevant only to the scope of damages." Id. Accordingly, "even a single comment may be actionable in the proper context" and summary judgment is appropriate "*only if* the record establishes as a matter of law that a reasonable jury could not find the employer liable under *any* theory." Id. (emphasis added).

Plaintiff charges that both Macy's and Clinique supervisors and employees repeatedly harassed her because of her disabilities, medical leaves and legally protected complaints, including, but not limited to, Jennifer Duffy and "Sharisse W". (Vitti Dep. Tr. 138:12-140:14). For example, co-workers continually watched as Plaintiff took her prescribed medications for anxiety and depression in the lunchroom to the point where Plaintiff felt she had to hide when she took her medications, as another co-worker accused Plaintiff of being an "embarrassment" because of her disabilities. (Vitti Dep. Tr. 440:16-445:24).

Plaintiff's complaints only escalated the unlawful abuse. (Vitti Dep. Tr. 159:6-18; 445:25-446:22; 447:5-454:24). Supervisors Jennifer Duffy (Macy's) and "Sharisse W" (Clinique) scrutinized Plaintiff's shoes, uniform and appearance on a daily basis to the point where Plaintiff felt she could do nothing right. (Vitti Dep. Tr. 444:21-454:24; 458:23-461:22). The same shoes and uniform that Plaintiff previously wore without incident, were suddenly the subjects of perpetual ridicule after Plaintiff's extended medical leave and legally protected complaints. (Vitti Dep. Tr. 444:21-454:24; 458:23-461:22). Co-workers also ignored Plaintiff, further alienating her in the workplace. (461:23-463:15). The unlawful abuse further exacerbated Plaintiff's anxiety and depression, and triggered the horrific, criminal abuses Plaintiff suffered as a child. (Vitti Dep. Tr. 444:21-454:24; 463:17-465:21).

13

In light of the above pattern of unlawful abuse, a reasonable jury can certainly find that Defendants subjected Plaintiff to a hostile work environment under the ADAAA, the NYSHRL and the NYCHRL.

### D.  A REASONABLE JURY CAN FIND THAT DEFENDANTS UNLAWFULLY RETALIATED AGAINST PLAINTIFF

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); Treglia, 313 F.3d at 719.

Plaintiff establishes a prima facie case of retaliation by demonstrating that: (1) she engaged in an activity protected by the ADA, NYSHRL and NYCHRL[4]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against Plaintiff; and (4) a causal connection exists between the alleged adverse action and the protected activity. Treglia, 313 F.3d at 719. A plaintiff's burden at this prima facie stage is de minimis. Id; Richardson v. New York State Dept. of Correctional Serv., 180 F.3d 426, 444 (2d Cir. 1999).

Both Macy's and Clinique supervisors and employees repeatedly discriminated against, harassed and retaliated against Plaintiff, including, but not limited to, Jennifer Duffy and "Sharisse W". (Vitti Dep. Tr. 138:12-140:14).

Plaintiff complained to Macy's human resources department and to supervisors on several occasions per Macy's procedures, but Macy's supervisors and human resources personnel turned

---

[4] The NYHRL contains similar provisions against retaliation and are governed in this respect by the same standards as the ADA. See 29 U.S.C. § 794(d); N.Y. Exec. Law § 296(7); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (applying ADA analysis to plaintiff's retaliation claim under both ADA and NYHRL).

Plaintiff away and the unlawful abuse escalated. (Vitti Dep. Tr. 159:6-18; 445:25-446:22; 447:5-454:24). Plaintiff's legally protected written complaint is undisputed, as is Defendants' knowledge of the complaint during Plaintiff's employment.  As stated in the previous section, the less than 2-month temporal proximity between Plaintiff's legally protected written complaint and Defendants' adverse actions, including, but not limited to, Defendants' cessation of Plaintiff's accommodations, Plaintiff's subsequent receipt of disciplinary actions and Plaintiff's firing, suffice to establish both causation and pretext. Treglia, 313 F.3d at 720; *see, e.g.*, Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (two months between protected activity and adverse action sufficient to establish causation); Johnson v. Palma, No. 88-7846, 1991 U.S. App. LEXIS 7065 (2d Cir., April 2, 1991) (same).

Accordingly, a reasonable jury can also find that Defendants retaliated against Plaintiff in violation of the ADAAA, the NYSHRL and the NYCHRL.


## POINT II

## DEFENDANTS FAILED TO REASONABLY ACCOMMODATE PLAINTIFF AS A MATTER OF LAW


Disability discrimination under the ADAAA encompasses not only adverse actions, but also failing to make reasonable accommodations for persons with disabilities, unless the employer demonstrates that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A)). "Undue hardship" is defined as: "[A]n action requiring significant difficulty or expense...." Id. at §12111(10)(A).

Plaintiff demonstrates a prima facie case of failure to accommodate by showing that: (1) she is a person with a disability under the meaning of the ADA, (2) the employer is covered under

the ADA and had notice of the plaintiff's disability, (3) the plaintiff could perform the essential functions of her job with an accommodation, and (4) the defendant refused to make such an accommodation. McMillan v. City of New York, No. 11-3932, 2013 U.S. App. LEXIS 4454, *27 (2d Cir. Mar. 4, 2013) (citing McBride v. BIC Consumer Products Mfg. Co., Inc., 583 F.3d 92, 96-97 (2d Cir. 2009)). "Once the plaintiff has demonstrated that there is a 'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits,' the defendant bears the burden of proving that the requested accommodation is not reasonable[5]." McElwee v. County of Orange, 700 F.3d 635, 642 (2d Cir. 2012).

"Reasonable accommodations" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials, or policies …" 42 U.S.C. § 12111(9).

"The NYCHRL defines 'reasonable accommodation' as 'such accommodation that can be made that shall not cause undue hardship in the conduct of the [employer's] business.'" LeBlanc v. UPS, No. 11 Civ. 6983 (KPF), 2014 U.S. Dist. LEXIS 50760, *53 (S.D.N.Y. Apr. 11, 2014) (emphasis in original). "[U]nder the NYCHRL, 'there are no accommodations that may be 'unreasonable' if they do not cause undue hardship.'" LeBlanc, No. 11 Civ. 6983 (KPF), 2014 U.S. Dist. LEXIS 50760, *53, quoting Phillips v. City of New York, 66 A.D.3d 170, 884 N.Y.S.2d 369, 378 (1st Dep't 2009). The burden of proving that the requested accommodation would result in an undue hardship is on Defendants. NYCHRL § 8-102(18); Vangas v. Montefiore Med. Ctr., 6 F. Supp. 3d 400, 417-418 (S.D.N.Y. 2014).

---

[5] Failure to accommodate claims under the ADA are analyzed under the *McDonnell Douglas* burden shifting test. Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999).

The NYCHRL defines "undue hardship" as "an accommodation requiring significant expense or difficulty." §8-107(3)(b); <u>Vangas</u>, 6 F. Supp. 3d at 417-418. In determining whether an accommodation constitutes an undue hardship, factors a court may consider include: (a) the nature and cost of the accommodation; (b) "the overall financial resources of the facility … involved in the provision of the reasonable accommodation; … the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility"; (c) the overall financial resources of the employer; and (d) "the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity ...." § 8-102(18); <u>Vangas</u>, 6 F. Supp. 3d at 417-418. "The question of whether an accommodation would cause an employer undue hardship is singularly case-specific." <u>Vangas</u>, 6 F. Supp. 3d at 417-418. (internal quotes and citation omitted).

Here, Defendants have not and *cannot* claim that accommodating Plaintiff's disabilities would impose an undue hardship – because Defendants accommodated Plaintiff for the first 8 months of her employment, without issue or incident.  The accommodations stopped only after Plaintiff returned from an approved extended medical leave, Plaintiff was unable to attend a Wednesday Clinique class due to Plaintiff's pre-scheduled therapy sessions, and after Plaintiff complained of Defendants' unlawful activity.

Further, Defendants make *no* reference, whatsoever, to any undue hardship on their business or otherwise when discussing their failure to accommodate Plaintiff.  Rather, Macy's simply states that "Duffy stopped allowing Vitti's preferred schedule." (Macy's 56.1 Statement No. 15).  Macy's claims that they were somehow entitled to stop accommodating Plaintiff based on claims that "Vitti had never maintained that she was medically unable to work on Wednesdays" and that "her scheduling modification was not the result of a request for reasonable

17

accommodation." (Macy's 56.1 Statement No. 15).  However, as with most of the claims asserted in Macy's Rule 56.1 Statement, those assertions are patently false and directly contradicted by the evidentiary record.  As pertinently, Defendants' claims do not demonstrate an undue hardship in any way to save them from liability under the ADAAA, the NYSHRL and the NYCHRL.

Accordingly, since there are no material facts in dispute with respect to this issue, Plaintiff respectfully requests that Defendants' failure to accommodate Plaintiff in violation of the ADAAA, the NYSHRL and the NYCHRL be confirmed as a matter of law.

### POINT III

### CLINIQUE JOINTLY-EMPLOYED PLAINITFF AS A MATTER OF LAW

For employment discrimination/retaliation litigation purposes, the term "employer" according to the Second Circuit "is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law." Spirt v. Teachers Ins. & Annuity Ass'n., 691 F.2d 1054, 1063 (2d Cir. 1982), *vacated and remanded on other grounds*, 463 U.S. 1223 (1983).  An employment relationship exists even for entities "who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation, terms, conditions or privileges of employment." EEOC v. Sage Realty Corp., 507 F. Supp. 599, 611 (S.D.N.Y. 1981); Dortz v. City of New York, 904 F. Supp. 127, 1995 U.S. Dist. LEXIS 15668 (S.D.N.Y. 1995) (same).

Under the joint employer doctrine, Plaintiff may also be "formally employed by one entity [Macy's]," but "assigned to work in circumstances that justify the conclusion that the employee is

at the same time constructively employed by another entity [Clinique]." <u>Arculeo v. On-Site Sales</u> <u>& Marketing</u>, LLC, 425 F.3d 193, 198 (2d Cir. 2005). "A joint employer relationship may be found to exist where there is sufficient evidence that the [defendant] had immediate control over the other company's employees" -- as occurred in the instant case. <u>N.L.R.B. v. Solid Waste Servs.,</u> <u>Inc.</u>, 38 F.3d 93, 94 (2d Cir. 1994).

Belying Clinique's claims that they somehow were not Plaintiff's joint employer, Plaintiff interviewed with both Macy's and Clinique, and Ester Chi told Plaintiff that her hiring depended on whether or not she passed her interview with Clinique. (Vitti Dep. Tr. 29:13-20; 30:25-31:12). Both Macy's and Clinique made the decision to hire Plaintiff. (Vitti Dep. Tr. 102:3-103:4).

Plaintiff worked as a skin care technician and makeup artist for Clinique in Macy's department store. (Vitti Dep. Tr. 26:21-24; 113:22-114:22). Plaintiff worked at Clinique's make-up and skin care counter *exclusively* during her employment with Defendants. (Vitti Dep. Tr. 26:8-20). As such, Plaintiff represented Clinique, and Plaintiff's job duties throughout her employment were "To [] sell [Clinique] products, teach people how to use [Clinique] products, do makeovers, consultations." (Vitti Dep. Tr. 26:25-27:14; 56:20-25; 25:23-26:7).

Both Clinique and Macy's supervisors, including "Sharisse W" and Jennifer Duffy, required that Plaintiff attend Clinique classes throughout her employment. (Vitti Dep. Tr. 63:20-64:23).  Defendants also required that Plaintiff travel to different locations outside of Macy's department store to attend Clinique classes, including, but not limited to, traveling to different hotels. (Vitti Dep. Tr. 61:4-11). Clinique employees also taught and/or supervised the training classes, including, but not limited to, Clinique's Regional Education Executive, "Cherise W". After Plaintiff completed some trainings, Clinique further certified that **"Angela Vitti has**

**achieved I am Clinique status"** on August 15, 2012." (Morrison Decl., EXHIBIT 3).  Clinique Executive, "Cherise W" signed Plaintiff's certification. (Id.)

Clinique further neglected to disclose to the Court Clinique's Professional Image Standards manual: an employee manual that Plaintiff was required to follow during her employment with Defendants. (Vitti Dep. Tr. 84:13-85:22; 103:5-23; Clinique's Image Standards, Morrison Decl., EXHIBIT 2). The manual required that Clinique's employees, including Plaintiff, wear Clinique uniforms, which had Clinique's name repeatedly printed in its lining, and Clinique pins. (Vitti Dep. Tr. 454:19-456:24).  The manual further dictated how Plaintiff and other Clinique employees were required to maintain their uniforms, their hair, nails, and make-up; and further described the shoes, hosiery, jewelry, belts, and clothing that Plaintiff and other Clinique employees were required to wear during working hours. (Vitti Dep. Tr. 84:13-85:22; 103:5-23; Clinique's Image Standards, Morrison Decl., EXHIBIT 2).

Clinique also gave Plaintiff money (aka "gratis") every 6-12 months to buy Clinique products. (Vitti Dep. Tr. 72:4-19).  These "gratis" were not discounts; they were means provided by Clinique to Plaintiff as a "Thank You" for Plaintiff's services, for Plaintiff to buy Clinique products. (Vitti Dep. Tr. 72:4-19).

Jennifer Duffy also reported to "Sharisse W," Clinique's Regional Training Manger. (Vitti Dep. Tr. 95:2-96:3).  And, both Jennifer Duffy and "Sharisse W" discriminated against, harassed and retaliated against Plaintiff. (Vitti Dep. Tr. 138:12-140:14).

The above factors demonstrate Clinique's co-employment relationship with Macy's as a matter of law, and their joint liability.

## POINT IV

## DENIAL OF DEFNDANTS' MOTIONS IN THEIR ENTIRETY IS FURTHER WARRANTED AS PLAINTIFF WAS DENIED A FULL AND FAIR OPPORTUNITY TO CONDUCT DISCOVERY

As the Supreme Court held in Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-256 (1981), Plaintiff must have a "full and fair opportunity" to prove the essential elements of her case. *See also* Miles v. New York Health & Racquet Club, No. 84 Civ. 36, 1985 U.S. Dist. LEXIS 16342, *4 (SDNY August 30, 1985) ("Plaintiff is certainly entitled to discovery before being forced to respond to a summary judgment motion."); Pickering v. American Express Travel Related Servs., 98 Civ. 8998, 1999 U.S. Dist. LEXIS 19676 (SDNY December 21, 1999) (denying summary judgment because discovery had not taken place; "thus summary judgment was premature"); Beam v. HSBC Bank, 2003 Dist. LEXIS 15744, 02-CV-0682E (WDNY August 19, 2003) ("[S]ummary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which it has the burden of proof.") (internal citation omitted).

The Supreme Court further mandates that Plaintiff be allowed a "full and fair opportunity to demonstrate pretext," which has not occurred in the instant case. Burdine, 450 U.S. at 255-256. *See also* St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 n. 3 (1993) (stating that if an employer fails to show a nondiscriminatory reason at trial the plaintiff will win unless his or her prima facie case does not convince the fact finder to infer a discriminatory motive).

The Second Circuit similarly holds that courts must view Plaintiff's evidence of pretext on summary judgment as a whole, as a jury would do at trial – which cannot occur here because Defendants failed to produce critical outstanding discovery and precluded Plaintiff from deposing

21

*any* defense witnesses. <u>Walsh v. New York City Housing Authority</u>, Docket No. 14-181-cv (2d Cir., July 7, 2016); <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 102 (2d Cir. 2001) ("At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer. A court is to examine the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. A motion for summary judgment may be defeated where a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.") (internal citations and quotation marks omitted).

Rule 56(d) of the Federal Rules of Civil Procedure ("FRCP") further states that a court may deny summary judgment motions and may allow time for additional discovery where a nonmovant demonstrates that more discovery is needed to effectively oppose the motions. Fed. R. Civ. P. 56(d); <u>Oneida Indian Nation v. City of Sherrill</u>, 337 F.3d 139, 167 (2d Cir.2003), *cert. granted,* 124 S.Ct. 2904 (2004) (NO. 03-855) (same).

Here, despite Plaintiff's diligent efforts to receive outstanding discovery and to schedule depositions, Defendants willfully failed to produce critical discovery and delayed in scheduling witness depositions in direct violation of FRCP 26, 33 and 34 and of Rule 26.4 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York (hereinafter, "the Local Rules") [Requiring Cooperation Among Counsel in Discovery].   The annexed Declaration of Laurie E. Morrison, Esq., submitted pursuant to FRCP 56(d) (hereinafter, "Morrison Rule 56(d) Decl."), details Defendants' numerous discovery abuses and violations of the Federal and the Local Rules. <u>Shaheen v. Naughton</u>, 222 Fed. Appx. 11, 13 (2d Cir. 2007) (An

affidavit submitted pursuant to Rule 56(d) (formerly Rule 56(f)) must state "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful.") (citations omitted); Oneida Indian Nation v. City of Sherrill, 337 F.3d 139, 167 (2d Cir.2003), *cert. granted,* 124 S.Ct. 2904 (2004) (NO. 03-855) (same).

Further, almost one month before the close of fact discovery, Plaintiff submitted a request for the Court's assistance in resolving the discovery disputes and requested an extension in the fact discovery deadline. (Morrison 56(d) Decl.). However, the Court declined to address the discovery disputes and did not respond to Plaintiff's extension request. Defendants still refused to comply with the Federal and Local Rules, so Plaintiff renewed her request to extend the fact discovery timeline. (Morrison 56(d) Decl.).  This time, the Court denied Plaintiff's extension request outright because it was not filed 48 hours before the close of fact discovery.  Plaintiff's initial extension request filed one month earlier was of no consolation. (Morrison 56(d) Decl.). In the end, despite Plaintiff's diligent efforts, Defendants did not produce outstanding discovery and did not produce any witnesses for depositions. (Morrison 56(d) Decl.).

Precluding Plaintiff from receiving critical discovery and from deposing defense witnesses does not provide Plaintiff a "full and fair opportunity" to pursue her case at trial as the Supreme Court and the Second Circuit mandates. Burdine, 450 U.S. at 255-256; Walsh, Docket No. 14-181-cv; Byrnie, 243 F.3d at 102. It also significantly undermines Plaintiff's ability to demonstrate pretext on summary judgment and at trial.

Plaintiff further respectfully submits that Defendants not be permitted to capitalize on their numerous discovery abuses by being allowed to escape the broad disclosure mandates and deposition requirements of FRCP 26, 33, 34 and of Local Rule 26.4 [Requiring Cooperation Among Counsel in Discovery] – and that Defendants not be allowed to rest their summary judgment motions on self-serving affidavits, without Plaintiff being afforded a full and fair opportunity to depose the affiants and defense witnesses before trial. Burdine, 450 U.S. at 255-256; Walsh, Docket No. 14-181-cv; Byrnie, 243 F.3d at 102.

Accordingly, Plaintiff respectfully requests the extension in fact discovery discussed in the annexed Morrison 56(d) Decl. so that Plaintiff can thoroughly respond to Defendants' submissions, and so Plaintiff can effectively pursue her case at trial.  If the Court is not inclined to extend fact discovery, then Plaintiff respectfully requests that the Court Order Defendants to produce the outstanding discovery 30 days before trial and that the length of trial be extended 7 days to enable Plaintiff to thoroughly depose defense witnesses on the stand.

## **CONCLUSION**

In light of the above, Plaintiff respectfully requests that the Court dismiss Defendants' motions in their entirety and that the Court resolve all undisputed issues of fact and law in Plaintiff's favor as required by Federal Rule of Civil Procedure 56

Dated:  New York, NY
        November 28, 2016

Respectfully submitted,

LAW OFFICES OF LAURIE E. MORRISON

By:   _____
        Laurie E. Morrison, Esq.
        *Attorney for Plaintiff*

24

100 Church Street, Suite 801
New York, New York 10007
(212) 721-4051 (office)(646) 651-4821 (fax)
morrison@lemorrisonlaw.com