UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 14-cv-5108 (RJS)

ANGELA VITTI,

Plaintiff,

VERSUS

MACY'S INCORPORATED *and* CLINIQUE LABORATORIES, LLC,

Defendants.

MEMORANDUM AND ORDER
September 29, 2017

RICHARD J. SULLIVAN, District Judge:

Plaintiff Angela Vitti ("Vitti") brings claims for disability discrimination and retaliation against Defendants Macy's Inc. ("Macy's") and Clinique Laboratories, LLC ("Clinique") under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Now before the Court are Macy's and Clinique's motions for summary judgment on all claims. For the reasons set forth below, both motions are granted.

I. BACKGROUND

A. Facts

Angela Vitti sold cosmetics in the Clinique department at Macy's Herald Square store from June 24, 2012 until April 4, 2013.[1] (Macy's 56.1 ¶¶ 1, 36.) She was hired after submitting a

---

[1] The following facts are generally taken from Macy's and Clinique's Local Civil Rule 56.1 Statements (Doc. Nos. 100 ("Macy's 56.1"), 84 ("Clinique 56.1")), Vitti's Counterstatements (Doc. Nos. 114 ("Pl. 56.1 – Clinique"), 115), Macy's and Clinique's 56.1 Counterstatements (Doc. No. 120 ("Clinique 56.1 Counter"), 125 ("Macy's 56.1 Counter"), the declarations submitted in support of and in opposition to Defendants' motions, and the exhibits attached thereto (Doc. Nos. 86–87, 102, 97–98, 116–117, 120–122, 124–125). Unless otherwise noted, where one party's 56.1 Statement or Counterstatement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding these motions, the Court also considered Defendants' supporting memoranda of law (Doc. Nos. 99, 83), Vitti's opposing memorandum of law (Doc. No. 113 ("Opp'n.")), and Defendants' replies (Doc. Nos. 123, 119).

Macy's application for employment and interviewing four times: first with Esther Chi, a Macy's employee; then with Aftin Poague, a part-time Clinique Associate Consultant, and Janine Grippo, a former Clinique employee; then over the phone with an unidentified representative of Estée Lauder, Clinique's parent company; and finally with Gina Esteves, whose employer is unspecified. (Clinique 56.1 ¶ 3; Doc. No. 116-1 at 29:2–20.) Although Vitti had indicated in her job application that she was available to work all shifts, she requested in her interviews that she be allowed to take Wednesdays off in order to attend weekly therapy sessions. (Macy's 56.1 ¶¶ 2, 3.) She did not reveal why she was receiving therapy, thinking that information "wasn't [anyone's] business." (Id. ¶ 4.) Vitti was hired in June of 2012. (Clinique 56.1 ¶ 7; Macy's 56.1 ¶ 1.)

Vitti believes that Macy's and Clinique jointly decided to hire her, but the basis for that belief is only her own memory of a comment reportedly made by Esther Chi, who was never deposed, to the effect that Vitti had to "pass" an interview with Clinique in order to work at the Clinique counter at Macy's. (Pl. 56.1 – Clinique ¶ 2.) According to Clinique, however, although Macy's often informs Clinique as a courtesy when it hires new employees to work in the Macy's Clinique department, and allows Clinique to "meet" those employees over the phone, Clinique plays no part in Macy's hiring decisions. (Clinique 56.1 ¶ 2; Clinique 56.1 Counter ¶ 1.) When she was hired, Vitti understood that she was "joining the Macy's team." (Clinique 56.1 ¶ 8.)

As expected, Vitti was assigned to work at the Clinique counter after she started at Macy's. (Clinique 56.1 ¶ 19.) As part of that process, Vitti completed a Macy's Form I-9 and Form W-4, signed a Macy's code of conduct, and was given a wage statement from Macy's. (Id. ¶¶ 12–14, 17.) She thereafter received her paycheck, W-2 documents, and insurance from Macy's, requested leave from her Macy's supervisor, and followed a work schedule established by Esther Chi and Jennifer Duffy, both Macy's employees. (Id. ¶¶ 15–16, 18, 20, 23, 26.) She reported directly to another Macy's employee. (Id. ¶ 21.) Vitti never filled out an application for employment with Clinique, never received a paycheck, benefits, or paperwork from Clinique, and never reported to any Clinique employee. (Id. ¶¶ 5, 9–18.) Clinique has no documents signed by Vitti and no record of her employment. (Id. ¶¶ 10, 11.) Vitti did, however, receive Clinique's Professional Image Standards Manual from Esther Chi – a manual that specifies the uniform that Clinique counter workers should wear and the grooming standards to which they should adhere. (Pl. 56.1 – Clinique ¶ 2.) She also attended educational sessions to learn more about Clinique's products. (Id.) According to Clinique, it distributes the manual and offers the training sessions in order to promote quality control at retail locations, but it has no control over whether an employee of a department store like Macy's follows the manual or attends the sessions. (Clinique 56.1 Counter ¶ 1.)

From June to November of 2012, Vitti's supervisor at Macy's allowed her to take Wednesdays off to attend therapy sessions, which Vitti's therapist usually insisted on scheduling for the same block of time each week. (Macy's 56.1 ¶¶ 6–7.) Vitti did not fill out any paperwork or otherwise seek a reasonable disability accommodation in connection with her weekly therapy sessions; she merely asked for and received Wednesdays off as part of Macy's preference-based scheduling policy. (See id. ¶¶ 5, 13–14.) Although her sessions lasted only forty-five minutes and were finished before 1:00 p.m., Vitti consistently took the whole of each Wednesday off, even when she was offered later work shifts, because she found the sessions

2

"extraordinarily emotional" and she preferred to spend the rest of the day at home. (*Id.* ¶¶ 7–8; Pl. 56.1 – Macy's ¶ 9.)

While working at Macy's, Vitti was subject to the attendance policy for union employees, which penalized tardiness and absence on a point system. (Macy's 56.1 ¶ 27.) Specifically, Macy's disciplined employees who accumulated a certain number of points over a specified period of time by giving them three progressively serious warnings. (*Id.* ¶¶ 27–28.) Vitti was given a first warning in October of 2012 after she accrued eight points for tardiness and absence, all of which were unrelated to her Wednesday therapy sessions. (*Id.* ¶¶ 29–30.)

In November of 2012, Vitti took a leave of absence to "deal with the impact of Superstorm Sandy." (*Id.* ¶ 9.) Macy's corporate Leave of Absence office in Florida processed the paperwork associated with her leave request. (*Id.* ¶¶ 9, 38.) In January of 2013, shortly before she returned to work, Macy's sent Vitti a letter that stated, "If you are able to return to work but have medical restrictions, have your healthcare provider complete the reasonable accommodation inquiry form included with this letter and return it to HR services and you[r] HR representative at least three weeks prior to the end of the leave." (*Id.* ¶ 9.) Vitti did not comply with the letter; she never had a healthcare provider fill out a reasonable accommodation form. (*Id.* ¶ 10.)

While Vitti was on leave, Macy's began rolling out a new automated scheduling system that "eliminated the . . . preference-based scheduling to which many associates had become accustomed" and instead required employees to apply to human resources for a religious or disability accommodation if they wished to take certain days off. (*Id.* ¶¶ 13–14.) When Vitti returned in January of 2013, she had a new supervisor, Jennifer Duffy, who assigned her to work Wednesday shifts because she had not made an accommodation request. (*Id.* ¶¶ 11, 15.) At some point, again without revealing anything about the purpose of her therapy sessions, Vitti asked Duffy if she could take Wednesdays off for therapy, but Duffy refused her request. (*Id.* ¶ 15.) According to Vitti, Duffy – who was never deposed – told her she had to give Duffy a doctor's note if she wished to make a scheduling accommodation request. (Doc. No. 98 ("Ganz Decl."), Ex. A at 62:12.) Vitti testified that she subsequently got a note from an unspecified doctor but was unable to give it to Duffy, who Vitti believed was avoiding her. (*Id.* at 62:17–19.) She tried to give the note instead to a human resources employee and then to her counter manager, but was told it had to go to Duffy. (*Id.* at 62:20–25.) Vitti did not see Duffy again before she was terminated in April, and she never made a reasonable accommodation request, although she alleges that she did submit a letter to human resources around the same time to complain about a coworker she believed was making fun of her for being under the influence of medication. (Doc. No. 116 ("Morrison Decl."), Ex 1 at 445:4–447:4.)

Following her return from leave in January 2013, Vitti continued to accumulate points for tardiness and absence unrelated to her Wednesday therapy sessions. She received another warning on March 5, 2013. (*Id.* ¶¶ 31–32.) She then proceeded to accrue ten more points during March for three further absences and another instance of tardiness. (*Id.* ¶ 33.) Again, none of these points was related to Vitti's Wednesday sessions. (*Id.*) Indeed, Vitti was also absent for the three Wednesdays in March on which she was scheduled to work, but Macy's did not count those absences against her. (*Id.* ¶¶ 33–34.) Vitti received a final warning on March 28, 2013 and was terminated for unsatisfactory attendance on April 4, 2013. (*Id.* ¶¶ 35–36.) Macy's later concluded that although Vitti's discipline was justified,

3

terminating her at that point in the process was an error attributable to a human resources representative's misunderstanding of the applicable collective bargaining agreement. (*Id.* ¶¶ 19, 22.) Macy's offered to reinstate Vitti at the same point in the disciplinary process, but Vitti never responded to the offer. (*Id.* ¶ 48.)

As for Vitti's physical and mental condition, Vitti testified at her deposition that she is affected by anxiety, depression, high blood pressure, and agoraphobia. (*Id.* ¶ 42.) She further stated that her anxiety in turn affects her breathing, walking, blood pressure, and sleeping, that her depression and concern about her blood pressure also affect her sleeping, and that her agoraphobia affects her ability to socialize with others. (*Id.* ¶ 44–46.) She nevertheless conceded that her various conditions do not limit her everyday functioning. (*Id.* ¶ 42.)

The only objective medical evidence submitted in support of Vitti's subjective complaints were a collection of unsworn documents attached as exhibits to her counsel's declaration, including: (1) a record of an emergency room visit related to high blood pressure that occurred on March 10–11, 2013, (2) three notes from Steinway Child and Family Services confirming that Vitti had appointments on three different dates in January and February of 2013, (3) a Walgreens "Blood Pressure Measurement Results" printout, and (4) the fax that Vitti sent to Macy's corporate Leave of Absence office in Florida to request permission to take leave following Superstorm Sandy. (Morrison Decl., Ex. 4.) None of these records mentions anything about Vitti's alleged difficulty breathing, walking, sleeping, or socializing, and the psychiatrist's form accompanying her leave of absence request notes that Superstorm Sandy aggravated Vitti's agoraphobia, but also states, "No incapacity anticipated after 1/2/13." (*Id.*) Nothing in the record suggests that any of Vitti's supervisors at the Macy's Herald Square store where she worked ever saw any of these records or otherwise knew about Vitti's alleged depression, anxiety, high blood pressure, or agoraphobia. (Macy's 56.1 ¶ 43.)

B. Procedural History

Vitti commenced this action on July 9, 2014. (Doc. No. 1.) After a series of extensions and adjournments, she filed an amended complaint on July 14, 2015, alleging that Clinique and Macy's discriminatorily discharged her, failed to accommodate her, and retaliated against her in violation of the ADA, the NYSHRL, and the NYCHRL. (Doc. No. 33.) The parties proceeded with discovery, which closed on November 20, 2015. (*See* Doc. No. 32.)

On December 29, 2015, after receiving a mediator's report indicating that the parties had reached a settlement (Doc. No. 47), the Court issued an order closing this case but allowing any party to request that it be reopened within thirty days (Doc. No. 49). For the next several months, the Court repeatedly extended the thirty-day deadline at the parties' request. (Doc. Nos. 50–55.) Finally, on June 13, 2016, Vitti's counsel submitted a letter requesting a conference to "resolve an impasse in the parties' settlement negotiations." (Doc. No. 57.) The Court ultimately held an evidentiary hearing on July 20, 2016 to determine whether Clinique and Macy's could enforce what they understood to be the parties' settlement agreement. After their motion to enforce was denied, Clinique and Macy's moved for summary judgment on September 12, 2016. (Doc. Nos. 82, 89.) Both motions were fully briefed by December 12, 2016.[2]

---

[2] Omitted here is the saga of Vitti's failure to complete discovery on time, including her failure to take *any* depositions, and the subsequent series of requests to reopen discovery, which the Court denied as untimely and

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## III. DISCUSSION

Vitti asserts the following claims under federal and state disability law against both Macy's and Clinique, on a joint employment theory: (1) wrongful termination, (2) failure to accommodate, and (3) retaliation. (*See* Am. Compl. at 10–20.) In her opposition papers, Vitti also asserts, for the first time, a hostile work environment claim. (Opp'n at 12–14.) The Court will first consider whether Clinique and Macy's jointly employed Vitti before turning to her disability claims.

### A. Joint Employment

When "an employee [who is] formally employed by one entity . . . has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity," the latter entity may be liable to the employee as her joint employer. *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005). "A joint employer relationship may be found to exist where there is sufficient evidence that [one company] had immediate control over the other

---

unjustified. (*See* Doc. Nos. 43–46, 104–109.) In her opposition to Defendants' motions for summary judgment, Vitti again renews her request to reopen discovery (*see* Opp'n at 21–24), which the Court again denies for the reasons set forth in its previous orders.

5

company's employees." *NLRB v. Solid Waste Servs.*, 38 F.3d 93, 94 (2d Cir. 1994). "Relevant factors to determine whether there is sufficient control over an employee include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Gonzalez v. Allied Barton Sec. Servs.*, No. 08-cv-9291 (RJS) (RLE), 2010 WL 3766964, at *3 (S.D.N.Y. Sept. 7, 2010) (citing *Solid Waste Servs.*, 38 F.3d at 94), *adopted*, 2010 WL 3766954 (S.D.N.Y. Sept. 27, 2010).

Although Vitti is adamant that Clinique and Macy's jointly employed her as a matter of law, the undisputed facts in the record clearly establish that Macy's alone employed her. Nearly all the relevant factors indicate that Clinique exercised no immediate control over Vitti: Macy's assigned Vitti to the Clinique counter, set her work schedule, supervised her, disciplined her, and ultimately terminated her. Macy's paid Vitti's salary, provided her with a wage statement and insurance, approved her medical leave, and required her to sign its code of conduct. Vitti submitted an application for employment and tax forms to Macy's alone. Clinique never paid or insured Vitti, has no records associated with her employment, and did not discipline or terminate her. Nor does anything in the record suggest that Clinique influenced Macy's decisions regarding Vitti's pay, schedule, leave, supervision, discipline, or ultimate termination.

Vitti nonetheless strains to raise a genuine factual dispute about whether Clinique exercised immediate control over her based on the following assertions: (1) Vitti interviewed with representatives of both Macy's and Clinique, and Esther Chi told her that she had to "pass" the Clinique interview in order to work at Macy's; (2) Vitti worked exclusively at the Clinique counter, was required to attend Clinique classes and adhere to Clinique's Professional Image Standards Manual, and perceived herself as "representing" Clinique; (3) Vitti's supervisor Jennifer Duffy reported to "Sharisse W.," Clinique's Regional Education Executive; and (4) Clinique occasionally gave Vitti Clinique products *gratis*. (Opp'n at 19–20.) The evidence in the record does not actually support all of these asserted facts, but even if it did, they would not be sufficient to show that Clinique exercised "meaningful control" over Vitti. *Creddille v. MTA NYC Transit Auth.*, No. 11-cv-5442 (SLT), 2014 WL 2917022, at *5 (E.D.N.Y. June 26, 2014), *aff'd*, 626 F. App'x 343 (2d Cir. 2015).

As an initial matter, nothing in the record substantiates either Vitti's assertion that a Clinique employee named "Sharisse W." supervised Jennifer Duffy or her claim that Clinique and Macy's jointly decided to hire her. Clinique has no record of an employee named either "Sharisse W." or "Cherise W." during the relevant time period, let alone an employee by that name who supervised Jennifer Duffy. (Doc. No. 121 ("Broadworth Reply Decl.") ¶ 3.) At most, the factual record here shows that a Clinique employee with the surname "Wade" or "Wale" and a first name that starts with "Ch" signed Vitti's achievement certificate for a Clinique class she attended on August 15, 2012. (Morrison Decl., Ex. 3.) Certainly nothing in the record suggests that Jennifer Duffy or anyone else at Macy's reported to any of Clinique's employees. And while Vitti may have had the impression that Macy's and Clinique jointly hired her, the only evidence she adduces to support that impression is her own deposition testimony reporting Esther Chi's comment about needing to "pass" the interview with Clinique, which hardly establishes that Macy's and Clinique made joint hiring decisions. Indeed, Esther Chi's comment is entirely consistent with Clinique's undisputed declaration that Macy's lets Clinique "meet" potential new counter workers as a courtesy and retains complete discretion over hiring and

6

assignment decisions. (Broadworth Reply Decl. ¶ 2); *see, e.g., Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (summary order) (affirming finding of no joint employment where one entity helped other entities using its brand to attract and train personnel). These factors thus do not weigh in favor of a finding that Clinique exercised "immediate control" over Vitti.

The record does show that Vitti worked exclusively at the Macy's Clinique counter and was expected to follow Clinique's Professional Image Standards Manual and attend classes to learn about Clinique products, but it does not support Vitti's position that *Clinique*, rather than Macy's, imposed those requirements on her. Rather, the undisputed facts indicate that Esther Chi, a Macy's employee, gave Vitti the manual, and that Clinique does not control whether Macy's employees follow the manual or attend educational sessions. Altogether, the relationship between Macy's and Clinique appears from the record to be a fairly standard one in which two separate entities find it mutually beneficial to cooperate in order to ensure a certain level of quality control – the sort of cooperative relationship that courts routinely find insufficient to demonstrate joint employment as a matter of law. *See, e.g., Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 127 (S.D.N.Y. 2011) (no joint employment between Time Warner and another cable company where Time Warner exerted some influence over company's quality control, helped train technicians, and distributed "tech tips"); *London v. NYS Dep't of Homeless Servs.*, No. 13-cv-6723 (PAC) (GWG), 2014 WL 3720401, at *6 (S.D.N.Y. July 29, 2014) (no joint employment between hotel and state agency where they simply "had a business relationship under which it was advantageous for [their] employees to work together to ensure that … hotel rooms satisfied certain quality standards"), *adopted*, 2015 WL 170245 (S.D.N.Y. Jan. 13, 2015).

In sum, having examined the record for evidence of joint employment – for any sign of "commonality of hiring, firing, discipline, pay, insurance, records, [or] supervision" between Clinique and Macy's, or any other indication that Clinique had "immediate control" over Vitti – the Court finds that the limited influence Clinique exerted over Macy's quality control measures does not constitute the kind of close, authoritative, and managerial control of Macy's employees that is necessary to establish joint employment as a matter of law. Accordingly, because Clinique did not employ Vitti, it is entitled to summary judgment on all of Vitti's claims.

B. Disability Discrimination

Having granted Clinique's motion for summary judgment, the Court now turns to Vitti's claims against Macy's for discriminatory discharge, failure to accommodate, and retaliation under the ADA. The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In adjudicating ADA claims, the Court uses the three-part burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which requires a plaintiff to establish a *prima facie* case before the "burden of production (but not persuasion) shifts to the defendant 'to provide a legitimate, nondiscriminatory reason for [its] decision.'" *Pugliese v. Verizon New York, Inc.*, No. 05-cv-4005 (KMK), 2008 WL 2882092, at *9 (S.D.N.Y. July 9, 2008) (quoting *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002)). If the defendant makes a satisfactory showing, the burden shifts back to the plaintiff to prove that

7

the defendant's "articulated, legitimate, non-discriminatory reasons were pretextual." *Id.* Using the *McDonnell Douglas* framework, the Court will consider each of Vitti's three ADA claims in turn, beginning with discriminatory discharge.

### 1. Discriminatory Discharge

To make out a *prima facie* case for discriminatory discharge, Vitti must show that:

(1) [Macy's] is covered by the ADA; (2) [Vitti] suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [she] was qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered an adverse employment action because of [her] disability or perceived disability.

*Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). The parties dispute all but the first element. Having considered the factual record, the Court concludes that Vitti has not met her burden here.

#### a. Disability

First, and most importantly, Vitti has not demonstrated that she was, at any time, "disabled" within the meaning of the ADA. The ADA defines a disability as (1) "a physical or mental impairment that substantially limits one or more of the major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). According to the EEOC's regulations, a "physical or mental impairment" is either a "physiological disorder or condition . . . affecting one or more body systems" or a "mental or psychological disorder, such as . . . emotional or mental illness." 29 C.F.R. § 1630.2(h). "Major life activities" include walking, breathing, sleeping, interacting with others, and working. *Id.* § 1630.2(i). An impairment is "substantially limiting" if it restricts a plaintiff's ability to perform a major life activity "as compared to most people in the general population." *Id.* § 1630.2(j)(ii); *see also Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001) ("Because the [EEOC] bears responsibility for implementing specific provisions of the ADA, we generally defer to the EEOC regulations in construing the ADA's terms."). "[I]t is not enough for a plaintiff to prove that an impairment 'implicates' a major life activity – he or she must prove that it is the impairment that 'substantially limits' the activity." *Bartlett v. N.Y. State Bd. of Law Examiners*, 226 F.3d 69, 84 (2d Cir. 2000).

Vitti alleges that she suffers from anxiety, depression, high blood pressure, and agoraphobia, which affect her breathing, walking, sleeping, and ability to interact with others. But she offers no admissible medical evidence of her alleged impairments, relying entirely on her own deposition testimony and a scattered collection of unsworn and unintelligible doctor's notes and emergency room records, a gap that alone is fatal to her *prima facie* case. *See, e.g., Capobianco*, 422 F.3d at 55 ("[U]nsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment."); *Cook v. Deloitte & Touche, LLP*, No. 03-cv-3926 (LAK) (FM), 2005 WL 2429422, at *12 (S.D.N.Y. Sept. 30, 2005) (no disability where only medical evidence offered was vague, unsworn doctor's note), *aff'd*, 198 F. App'x 107 (2d Cir. 2006); *Zuppardo v. Suffolk Cty. Vanderbilt Museum*, 19 F. Supp. 2d 52, 56 (E.D.N.Y. 1998) (plaintiff not disabled where he "failed to supply any medical evidence of his condition"), *aff'd*, 173 F.3d 848 (2d Cir. 1999).

8

Relatedly, and more particularly, Vitti has not adduced any competent medical evidence that any of her claimed impairments substantially limits one or more major life activities. "District courts in the Second Circuit have repeatedly held that a plaintiff's personal testimony which describes the alleged limits that affect a major life activity, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA." *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 301 (S.D.N.Y. 2003) (collecting cases). Thus, Vitti cannot defeat a motion for summary judgment by relying, as she does here, on her own unsubstantiated assertions about her difficulty breathing, walking, sleeping, and socializing.

Furthermore, even if the Court could credit Vitti's own statements about her impairments, they simply do not establish that she was "substantially limited" in her ability to sleep, walk, breathe, or interact. Tellingly, Vitti herself testified that her impairments did not "limit [her] in any way from functioning day to day." (Ganz Decl., Ex. B at 162:23–25.) Her testimony certainly does not establish that her difficulty sleeping, which is a "widespread" problem, is "worse than is suffered by a large portion of the nation's adult population." *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998). Nor does it show that her occasional anxiety attacks or agoraphobia limit her ability to walk or breathe in any significant way, whether in terms of severity or persistence. Altogether, Vitti's statements, taken at face value, at most establish that her various impairments "implicate" major life activities, which is not sufficient to support a finding of disability under the ADA. *Bartlett*, 226 F.3d at 84.

There is likewise no evidence in the record that Macy's "regarded" Vitti as disabled or had a "record" of her claimed disability. A plaintiff is "regarded" as disabled if she is "subjected to [discrimination] because of an actual or perceived impairment that is not both "transitory and minor," 29 C.F.R. § 1630.2(g), regardless of whether the impairment limits or is perceived to limit a major life activity, 42 U.S.C. § 12102(3)(A); *see also Darcy v. City of New York*, No. 06-cv-2246 (RJD), 2011 WL 841375, at *4 (E.D.N.Y. Mar. 8, 2011) ("[A] cognizable ADA injury occurs when an employer takes an adverse employment action against an employee because of its perception that the employee suffers from a recognized disability."). A plaintiff has a "record" of a disability if she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1).

Vitti argues that Macy's regarded her as disabled and had a record of her disability because her supervisors knew that she attended weekly psychotherapy sessions and took a leave of absence partly for health reasons. (Opp'n at 7.) But the undisputed factual record indicates that Vitti never told her supervisors anything about why she needed to attend weekly therapy because it "wasn't [their] business," and that she applied for leave to Macy's Leave of Absence Office in Florida, which does not share paperwork with supervisors at retail stores. (Ganz Decl., Ex. C at 274:18–276:15; Macy's 56.1 ¶ 38.) In any case, the mere fact that an employer is aware of an employee's depression, for example, hardly establishes that the supervisor "regards" her as *disabled*. And a doctor's note accompanying a leave request certainly does not constitute a "history of . . . a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). In short, the undisputed facts simply cannot support a finding either that Macy's regarded Vitti as disabled or that there was a record of her disability.

9

b. Other Elements

Vitti's failure to adduce evidence that she was disabled or regarded as disabled within the meaning of the ADA is alone fatal to her discriminatory discharge claim. But even if she could demonstrate such a disability, summary judgment would still be warranted here, since the undisputed record also includes plentiful evidence that Vitti was not qualified to perform the essential elements of her job and that she was terminated for legitimate business reasons under circumstances that do not give rise to an inference of discrimination.

With respect to Vitti's qualifications, the record shows that she repeatedly violated Macy's attendance policy by arriving at work late and occasionally failing to report to work altogether. Nothing in the record suggests that Vitti's chronic tardiness was attributable to her claimed impairments, and Macy's never counted Vitti's non-attendance on Wednesdays against her, even after it began requiring her to work on Wednesdays. Vitti's inability to reliably arrive at work on time, particularly in a setting where physical presence is indispensable, sufficiently demonstrates that she was not qualified to perform the essentials of her job. *Kotlowski v. Eastman Kodak Co.*, 922 F. Supp. 790, 798 (W.D.N.Y. 1996); *see also id.* ("The ADA does not require an employer to accommodate [a depressed] employee who cannot get to work."); *Misek-Falkoff v. IBM Corp.*, 854 F. Supp. 215, 227 (S.D.N.Y. 1994) ("An employer may certainly require an employee's presence at the workplace when interaction with others is essential to the task to be performed[.]").

The undisputed record of Vitti's chronic tardiness also defeats her claim that she was fired for discriminatory reasons. As a result of her repeated absences and tardiness, Vitti was subjected to Macy's standard three-step disciplinary process, which eventually culminated in her termination after she accrued a certain number of points. Vitti has not put forward any evidence to suggest that she was fired for discriminatory rather than disciplinary reasons, and there is simply nothing in the record to suggest that Vitti was singled out or treated differently from other employees with comparable point totals. As a result, Vitti has offered no facts that support an inference of discrimination, while there is abundant evidence that Vitti was fired for what her supervisors believed to be legitimate business reasons.

In sum, because the undisputed facts show that Vitti was not disabled within the meaning of the ADA, that she was not qualified for her job, and that she was terminated for legitimate business reasons under circumstances that do not give rise to an inference of discrimination, the Court grants Macy's motion for summary judgment on Vitti's discriminatory discharge claim and turns to her claim for failure to accommodate.

2. Failure to Accommodate

To make out a *prima facie* case for failure to accommodate, Vitti must show that:

(1) [she had] a disability under the meaning of the ADA; (2) [Macy's] had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) [Macy's] refused to make such accommodations.

*McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009). Vitti argues that Macy's failed to accommodate her as a matter of law when it began requiring her to work on Wednesdays. The Court disagrees.

As an initial matter, and as noted above in connection with Vitti's discriminatory discharge

10

claim, Vitti can show neither that she had a disability within the meaning of the ADA nor that Macy's had notice of her disability. That alone warrants granting Macy's motion for summary judgment here.

But even if Vitti could demonstrate disability and notice, the undisputed facts would not support a finding that Macy's refused Vitti a reasonable accommodation. The record indicates that Macy's originally allowed Vitti to take Wednesdays off in order to accommodate her personal scheduling preferences, not in response to a disability accommodation request. When Macy's switched to a new system that eliminated preferential scheduling and required employees to request medical or religious accommodations if they wished to take particular days off, Vitti could have requested a medical accommodation, and may have been in the process of trying to do so, but she was terminated for tardiness and absence unrelated to her claimed disability before she submitted such a request. The record is therefore clear that Macy's never refused a request by Vitti for reasonable accommodation within the meaning of the ADA. *See, e.g., Bresloff-Hernandez v. Horn*, No. 05-cv-0384 (JGK), 2007 WL 2789500, at *10 (S.D.N.Y. Sept. 25, 2007) (no refusal of accommodation where "plaintiff's request appeared to be nothing more than a request to accommodate a personal preference"); *Felix v. N.Y. City Transit Auth.*, 154 F. Supp. 2d 640, 656–57 (S.D.N.Y. 2001) ("The initial burden of requesting an accommodation is on the employee, and it is only after such a request has been made that the employer must engage in the 'interactive process' of finding a suitable accommodation."); *Stola v. Joint Indus. Bd.*, 889 F. Supp. 133, 135 (S.D.N.Y. 1995) (An "employer is obliged to accommodate only those disabilities that are obvious or called to its attention by the employee."). The Court accordingly grants Macy's motion for summary judgment on Vitti's failure to accommodate claim as well.

### 3. Retaliation

In addition to prohibiting disability discrimination itself, the ADA bars employers from retaliating against any employee for "oppos[ing] any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a). To make out a claim of retaliation, Vitti must show that "(1) [she] engaged in activity protected by the ADA, (2) [Macy's] was aware of this activity, (3) [Macy's] took adverse employment action against [her], and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). With respect to the first element, "[p]rotected activity typically refers to action taken to protest or oppose statutorily prohibited discrimination." *Goonan v. Federal Reserve Bank of New York*, 916 F. Supp. 2d 470, 484–85 (S.D.N.Y. 2013). The filing of an EEOC complaint, for example, is one type of protected activity. *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 583 (S.D.N.Y. 2008).

Vitti argues that after she "complained to Macy's human resources department and to supervisors on several occasions" and also submitted a "legally protected written complaint," Macy's retaliated against her less than two months later by denying her a reasonable accommodation and then firing her. (Opp'n at 14–15.) The undisputed facts in the record, however, do not support her characterizations.

First, Vitti did not engage in protected activity within the meaning of the ADA. Her deposition testimony indicates that her "protected activity" consisted of (1) requesting that Jennifer Duffy give her Wednesdays off to attend therapy, (2) attempting to leave a doctor's note with an unidentified human resources

employee and a counter manager, both of whom told her she had to leave it with Duffy instead, and (3) complaining to human resources about a coworker who Vitti believed was making fun of her for being under the influence of medication. To the extent that Vitti's interactions with Duffy, the counter manager, and human resources were part of an attempt to make a request for a reasonable accommodation, they cannot also be "protected activity" for retaliation claim purposes. *See, e.g., Scott-Robinson v. City of New York*, No. 15-cv-09703 (NRB), 2016 WL 7378775, at *3 (S.D.N.Y. Dec. 15, 2016) ("[A] retaliation claim cannot be based on the same conduct that comprises a failure-to-accommodate claim.") (citing *Snowden v. Trs. of Columbia Univ.*, No. 12-cv-3095 (GBD), 2014 WL 1274514, at *6 (S.D.N.Y. Mar. 26, 2014), *aff'd*, 612 Fed. App'x 7 (2d Cir. 2015)). In any case, Vitti was clearly not "opposing statutorily prohibited discrimination" by complaining about Macy's new scheduling policy, trying and failing to drop off a doctor's note, and submitting a grievance about a coworker's behavior.

Furthermore, Vitti has not demonstrated a causal connection between her termination and what she regards as her protected activity. She argues that the "less than [two]-month temporal proximity" between the activity and her termination "suffice[s] to establish both causation and pretext" (Opp'n at 15), but temporal proximity alone only shifts the burden to Macy's to articulate a legitimate, non-retaliatory reason for terminating Vitti. *See Pugliese*, No. 05-cv-4005 (KMK), 2008 WL 2882092, at *9. As discussed in connection with Vitti's discriminatory discharge claim, Macy's has obviously done so, since there is ample evidence demonstrating that Vitti was terminated after accruing a certain number of points through Macy's disciplinary system for her routine tardiness and absence from work. The burden therefore shifts back to Vitti to adduce at least some evidence that Macy's stated reason was pretextual, something that she clearly has not done. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("[W]ithout more, . . . temporal proximity is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext[.]") Accordingly, the Court finds that Vitti has not made out a retaliation claim, and grants Macy's motion for summary judgment here as well.

### C. Hostile Work Environment

In her brief, Vitti also asserts for the first time a hostile work environment claim. (Opp'n at 12–13.) Preliminarily, the Court notes that the Second Circuit has "not yet decided whether a hostile work environment claim is cognizable under the ADA." *Hinz v. Vill. of Perry*, 667 F. App'x 3, 3–4 (2d Cir. 2016) (quoting *Robinson v. Dibble*, 613 Fed. App'x. 9, 12 n.2 (2d Cir. 2015) (summary order)). But even assuming it is, the law is very clear that Vitti may not include in her opposition brief a new claim that she never asserted in the Amended Complaint or sought to add by repleading pursuant to Rule 15 of the Federal Rules of Civil Procedure. *See Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (refusing to address hostile work environment claim asserted for first time in plaintiff's opposition to summary judgment motion). Moreover, the undisputed factual record comes nowhere close to supporting a finding that Vitti's work environment was "permeated" with "severe" or "pervasive" "intimidation, ridicule, and insult." *Ugactz v. United Parcel Serv., Inc.*, No. 10-cv-1247 (MKB), 2013 WL 1232355, at *17 (E.D.N.Y. Mar. 26, 2013). Vitti testified in her deposition that a co-worker once called her an "embarrassment." (Doc. No. 116-1 at 67.) But whether that comment had anything to do with Vitti's alleged disability is unclear, and even if it did, such "offhand comments, or isolated incidents of offensive conduct" do not establish

a hostile work environment. *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004). The Court accordingly dismisses Vitti's belated hostile work environment claim.

### D. State and City Law Claims

In addition to her ADA claims, Vitti also alleges disability discrimination claims under the NYSHRL and the NYCHRL. Having dismissed the federal claims in this action, the Court declines to exercise supplemental jurisdiction over Vitti's state and city law claims. Of course, there is no dispute that the Court has original jurisdiction over Vitti's ADA claims, 28 U.S.C. § 1331, and that it may exercise supplemental jurisdiction over Vitti's state and city law claims, which are sufficiently closely related to the ADA claims as to form part of the same case or controversy, 28 U.S.C. § 1367(a). Nevertheless, a court may decline to exercise supplemental jurisdiction where the "court has dismissed all claims over which is has original jurisdiction." *Id.* § 1367(c)(3). In deciding whether to exercise supplemental jurisdiction in such a case, the court "balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Cohill*, 484 U.S. at 350 n.7); *see also Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated . . . , the federal court should ordinarily dismiss the state claims.").

This is the "usual case." Vitti's federal law claims were eliminated before trial, "prior to the investment of significant judicial resources," and the Court "can discern no extraordinary inconvenience or inequity occasioned by permitting the [state and city] claims to be refiled in state court." *Kolari*, 455 F.3d at 122–24. Indeed, courts in this circuit "regularly decline jurisdiction over NYSHRL and NYCHRL claims once the federal employment claims have been dismissed." *Morant v. Physicians Affiliate Grp. of New York, P.C.*, No. 14-cv-0067, 2014 WL 3964153, at *2 (S.D.N.Y. Aug. 13, 2014) (quoting *Harris v. NYU Langone Medical Ctr.*, No. 12-cv-0454 (RA), 2014 WL 941821, at *2 (S.D.N.Y. March 11, 2014)). Accordingly, since the Court has dismissed the claims over which it has original jurisdiction, and this case presents no extraordinary circumstances or federal policy concerns that might warrant retaining jurisdiction over the state and city law claims, the Court declines to exercise supplemental jurisdiction and dismisses Vitti's state law claims without prejudice.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment are granted. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 82 and 89, enter judgment in favor of Defendants on Plaintiff's ADA claims, dismiss without prejudice Plaintiff's remaining state and city law claims, and close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: September 29, 2017
New York, New York

\* \* \*

Plaintiff is represented by Laurie Elene Morrison of the Law Office of Laurie E. Morrison, 100 Church St., 8th Floor, New York, NY 10007.

Defendant Macy's is represented by Christopher Michael McFadden of Schoeman Updike & Kaufman & Gerber LLP, 551 Fifth Avenue, 12th Floor, New York, NY 10176, David H. Ganz and Steven Gerber of Gerber & Partners LLP, One Penn Plaza, Suite 4701, New York, NY 10119, and Latieke M. Lyles of Macy's Law Department, 111 Boulder Industrial Drive, 2nd Floor, Bridgeton, MO 63034.

Defendant Clinique is represented by Barbara M. Roth, David Justin Baron, and Michael Emanuel DeLarco of Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022.